UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

DEIDRE BROWN, LYNN CAIN, CHERYL
GERALD, DEBRA JONES, DONNA
KELSAY, ANNE M.Z. NOVOTNY and
GLORIA SALAZAR, on behalf of
themselves and all others
similarly situated,

                                                     NO. CIV. S-98-1719 LKK/JFM

     Plaintiffs,

    v.                                    O R D E R

SACRAMENTO REGIONAL TRANSIT
DISTRICT,

     Defendant.

_____/

    Plaintiff, Cheryl Gerald, is a class representative in a class action against Sacramento Regional Transit District ("the District") alleging gender discrimination in promotions, reclassification, pay and training.  The court approved a consent decree in 2003 and a Special Master was appointed.

    Pending before the court are two appeals of the Special Master's rulings.  Plaintiff appeals the Special Master's March 6,

1

2007 ruling regarding her salary grade. Defendant appeals the Special Master's March 22, 2007 ruling regarding Ann Gorman's complaint of retaliation.

## I.

### STANDARD OF REVIEW

Pursuant to ¶ 29.6 of the Consent Decree:

> The Special Master's decisions shall be final unless either Party requests review by the court within ten (10) days. The court shall use the "clearly erroneous or contrary to law" standard in all appeals of decisions by the Special Master. The Special Master and/or Court shall retain jurisdiction to resolve any issue timely raised prior to the expiration of the Consent Decree.

A "finding of fact is clearly erroneous if [the reviewing court has a] definite and firm conviction that a mistake has been committed." Burdick v. C.I.R., 979 F.2d 1369, 1370 (9th Cir. 1992). This standard "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 573 (1985). Where there are "two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574. 574. The standard is "significantly deferential" to the fact finder. Concrete Pipe and Products of California, Inc. v. Construction Laborers Pension Trust for Southern California, 508 U.S. 602, 623 (1993).

////

////

1

**II.**

2

**ANALYSIS**

3      At the outset, it is worth remarking that both parties

4 assume a level of knowledge that the court does not share.  This

5 case is complex and complicated.  Generally speaking, the

6 parties' briefs failed to sufficiently explain basic background

7 information, making resolution of the pending appeals

8 unnecessarily difficult.

9 **A.   Plaintiff's Appeal**

10      Ms. Gerald seeks reversal of the Special Master's March 7,

11 2007 Order.  As explained herein, Ms. Gerald fails to establish

12 that the order is clearly erroneous or contrary to law.

13      **1.   Relevant Facts**

14      Cheryl Gerald currently works in the District's Information

15 and Technology Department ("IT") as a Information Technology

16 Analyst.  Until recently, Ms. Gerald was paid at grade level

17 15.[1]      On January 5, 2006, Ms. Gerald filed a Request for

18 Reclassification of her position pursuant to ¶ 55 of the Consent

19 Decree.  The District granted Ms. Gerald's request and hired an

20

_____

21      [1]  The court notes that neither party explains what grade 15

22 actually means.  Ms. Gerald simply states:

23      RT assigns salary grades as set forth in its General Pay
       and Management and Confidential Families ("MCEG").  Exh.
       G at 4.  Salary grades in the General Family category

24     salary grades range from Grade 01 to Grade 31 and in the
       MCEG category range from MC 01 to MC 31.  Id.  Each of

25     the salary grades has a minimum and maximum value.

26 Pl.'s Appeal at 2.  This explanation simply furthers confusion.

1  outside consultant to study her position.  Once this study was

2  complete, the District determined that Ms. Gerald was

3  appropriately "classified."  Ms. Gerald appealed this decision

4  to the Special Master, also pursuant to ¶ 55 of the consent

5  decree.

6       On October 11, 2006, the Special Master issued a ruling

7  finding that:

8           [T]he reclassification study and corrected study
            appropriately compared and analyzed Ms. Gerald's
9           position and that the request for a further
            reclassification study is, therefore, not well taken.

10

11 Oct. 11, 2006 Ruling, Ex. B of Thomas Decl.  The Special Master

12 did, however, conclude that further study of Ms. Gerald's salary

13 was warranted:

14          RT does not deny that Ms. Gerald's position remains at
            the same salary grade while the  [male] Analyst I and
15          II positions were upgraded in 2004.  Thus, relative to
            those she supervises, Ms. Gerald's salary does not
16          have the same spread as it did before the
            reorganization and the lack of salary adjustment may
17          well have violated an agreement to move her position
            up if the Analyst I & II positions were moved up
18          [citations omitted].

19          The Special Master finds that the reclassification
            study and corrected study appropriately compared and
20          analyzed Ms. Gerald's position …[h]owever, the Special
            Master finds that Ms. Gerald's position should be
21          studied with respect to its salary.

22          The Special master {sic} notes that other salary
            assessments and adjustments have been made in the
23          Information Technology Department, including the new
            manager and in light of the fact the lower
24          classification salaries were adjusted, but not Ms.
            Gerald's, an inference of discrimination and/or
25          retaliation is created.

26          In order to dispel any inference of

                                4

1   discrimination or retaliation, the Special Master
2   orders RT to do a thorough and complete salary
    analysis of Ms. Gerald's position.

3   Id.  It is undisputed that the District complied with the

4   October 11th Order and hired an additional consultant to prepare

5   a salary survey of Ms. Gerald's salary level.

6        Upon completion of this salary study, the District

7   recommended that the appropriate salary level for Ms. Gerald was

8   MC17.  The recommendation was submitted to the Special Master

9   who approved the MC17 grade level in an order dated December 29,

10  2006.  Ex. C, Thomas Decl.

11       Soon thereafter, the District prepared an Issue Paper for

12  approval by the District's Board of Directors in an effort to

13  implement the Special Master's December 29, 2006 ruling.  The

14  Issue Paper provided the following explanation of the proposed

15  action for approval by the Board of Directors:

16       Pursuant to a December 29, 2006 ruling of the Special
         Master, it was ordered that the District reallocate
17       one Senior Information Technology Analyst position
         from salary grade G15 to salary grade MC17, effective
18       as of February 1, 2005.  Since the decision relates
         solely to the incumbent who presently holds this
19       position; the other two Senior Information Technology
         Analyst positions will remain at salary grade G15,
20       pending completion of the District-wide salary survey
         project.
21
         In order to implement the Special Master's ruling, the
22       District has created the salary grade applicable to
         the one Senior Information Technology Analyst position
23       as salary grade G15A.  Salary grade G15A shall be
         aligned at the level of the MC17 grade pursuant to the
24       terms of the Special Master's order.  Since this
         position is not considered eligible for
25       reclassification to that of a MCEG, this proposal
         satisfies the conditions of the order and maintains
26       the allocation of this position within the General

                                5

1    Family.

2    Ex. D to Thomas Decl.  The District was attempting to harmonize

3    the fact that Ms. Gerald was working at the appropriate level

4    (i.e., that she was appropriately classified) with the Special

5    Master's order to increase Ms. Gerald's pay grade.

6        Counsel for Ms. Gerald objected to the Issue Paper and

7    raised several issues.  On February 5, 2007, counsel for Ms.

8    Gerald sent a two page letter containing several exhibits to the

9    Special Master requesting "an order compelling compliance with

10   the Special Master's ruling that the 'appropriate class for

11   [Cheryl Gerald] is MC17, as proposed by Regional Transit."  Ex.

12   D & E, Thomas Decl.

13       On February 22, 2007 the District submitted to the Special

14   Master a response to Ms. Gerald's concerns.  Ms. Gerald replied

15   and alleged that the District's implementation of the Special

16   Master's order served as further evidence of discrimination

17   and/or retaliation.  Ex I, Thomas Decl.  At that point, the

18   matter was submitted and the District was not given an

19   opportunity to reply to Ms. Gerald's new allegations of

20   discrimination.

21       On March 6, 2007 the Special Master issued an order which

22   Ms. Gerald now appeals to this court.  The March 6th Order

23   attempted to clarify the December 29th Order.  The Special

24   Master conceded that there was confusion between the terms

25   "classification" and "salary grade" and explained that the focus

26   of the December 29th Order was salary grade not classification

1  or reclassification: "[t]he classification issue had been

2  decided in the October 11, 2005 Order."  March 7, 2007 Order at

3  2, Ex. I, Thomas Decl.   (In the October Order, the Special

4  Master found that Ms. Gerald was appropriately classified).

5       In the March 6th Order, the Special Master concluded that

6  the District had properly implemented its prior ruling in

7  "providing that Ms. Gerald's salary is equivalent (aligned with)

8  Grade MC17 and paying back as ordered.  There was no violation

9  of the Consent Decree by taking the issue to the Board."  March

10  7, 2007 Order at 3, Ex. I, Thomas Decl.

11       **2.   Analysis**

12       Ms. Gerald seeks reversal of the Special Master's March 7,

13  2007 Order.  As explained herein, Ms. Gerald fails to establish

14  that the March 7, 2007 Order is clearly erroneous or contrary to

15  law.

16       Ms. Gerald makes two general arguments, neither of which

17  establish that the Special Master's decision should be reversed.

18  First, Ms. Gerald argues that the March 7th Order contradicts

19  the Special Master's previous orders.  Specifically, Ms. Gerald

20  explains that in her October 11, 2006 Order, the Special Master

21  found that "Ms. Gerald's salary does not have the same spread as

22  it did before the reorganization and the lack of salary

23  adjustment may well have violated an agreement to move her up if

24  the Analyst I & II position were moved up."  Oct. 11, 2006

25  Order.  Ms. Gerald then argues that "despite these factual

26  findings, the Special Master ruled [in March 2007] that [the

7

1  District's] assignment of Ms. Gerald to the same salary grade

2  with a designation of Grade 15 A met the requirements of her

3  initial order."  Pl.'s Appeal at 7.  In short, Ms. Gerald argues

4  that although she is being paid more at the 15A grade level, she

5  is not obtaining the benefits of being at the MC17 grade level.

6      The court is sympathetic to Ms. Gerald's position, however,

7  the record simply does not support her argument.  The District's

8  Issue Paper (which is part of the record) specifically stated

9  that although Ms. Gerald would be paid at the newly created 15A

10  grade, she would receive all the benefits of a MC17 employee.

11  The District explained that it created the grade 15A in an

12  effort to pay Ms. Gerald more while simultaneously respecting

13  the fact that the Special Master had concluded that Ms. Gerald

14  did not need to be reclassified.

15      The Special Master's March 7, 2007 Order is clear on this

16  point.  The Special Master, responding to Ms. Gerald's concerns,

17  specifically explained the ambiguity in her previous orders.

18  Laying out all the relevant facts, the Special Master explained

19  that the issue of classification had been decided in the October

20  11, 2006 Order.  On December 29, 2006, the Special Master then

21  ordered that Ms. Gerald be paid at the MC17 grade level.  In her

22  March 7, 2007 order, the Special Master essentially found that

23  the District's creation of the 15A grade level was permissible

24  as the 15A grade level is aligned and equivalent to MC 17.  To

25  the extent that the Special Master concluded that the two pay

26  grade levels are aligned, there is no grounds to disturb this

8

1  factual finding.

2       At oral argument the court asked plaintiff's counsel for

3  clarification on this point.  Specifically, the court asked

4  whether or not there were benefits to being at the MC17 grade

5  versus at 15A.  Plaintiff's counsel argued that there were

6  differences between the two pay grades, but failed to explain

7  where in the record the court would find such evidence.

8  Moreover, counsel for the District contended that the two grade

9  levels were in fact aligned – that Ms. Gerald would receive

10 identical benefits at the 15A grade level.  In support of this

11 proposition, counsel for the District cited to the Issue Paper

12 drafted by the District and submitted to both plaintiff and the

13 Special Master.

14      While Ms. Gerald presents a compelling argument, it is

15 simply not clear that the record supports her position.

16 Moreover, the court gives great deference to the Special

17 Master's factual findings.  See Concrete Pipe and Products of

18 California, Inc. v. Construction Laborers Pension Trust for

19 Southern California,  508 U.S. 602, 623 (1993).  The Special

20 Master reviewed the record and concluded that the two grade

21 levels were equivalent.  Ms. Gerald fails to cite to any part of

22 the record which would suggest the Special Master's order was

23 clearly erroneous or contrary to law.

24      Ms. Gerald also argues that the "Special Master's failure

25 to consider Ms. Gerald's evidence ofcontinued [sic] gender

26 discrimination and retaliation is contrary to law."  Pl.'s

1   Appeal at 8.  Ms. Gerald maintains that she presented evidence

2   to the Special Master that "the District modified its

3   classification from MC 17 to Grade 15 A less than two weeks

4   after Ms. Gerald testified at a hearing before the Special

5   Master for another class member Ann Gorman who also alleged

6   gender discrimination and retaliation."  Pl.'s Appeal at 9.

7        As the District properly points out, Ms. Gerald's arguments

8   about continued gender discrimination were first raised in her

9   reply brief to the Special Master, thereby precluding the

10  District from responding to these allegations.  Accordingly, the

11  issue of continued discrimination was not clearly before the

12  Special Master as it was briefed only by Ms. Gerald.  This would

13  explain why the Special Master's March 7th Order did not address

14  the allegation or consider the evidence presented by Ms. Gerald.

15       Even if the court were to assume that the Special Master

16  could have, or should have, considered the additional

17  allegations of discrimination, it is not clear that the Special

18  Master's failure to consider Ms. Gerald's argument is clearly

19  erroneous or contrary to law.  Ms. Gerald's appeal to this court

20  contains only two pages on this issue and fails to provide any

21  meaningful justification for why this court should reverse the

22  decision of the Special Master.

23       In sum, it remains unclear how, if at all, the March 7th

24  Order is clearly erroneous or contrary to law.  Accordingly, Ms.

25  Gerald's appeal is DENIED.

26  ///

**B.     The District's Appeal**

     The District appeals the Special Master's March 22, 2007
ruling regarding the complaint of Ann Gorman.  For the reasons
discussed herein, the Special Master's ruling must be affirmed.

     **1.     Relevant Facts**

     The facts surrounding the District's appeal are relativity
clear and undisputed.  Ms. Gorman was employed as an
Administrative Assistant II with the Accessible Services
division within the District.  Her position is governed by the
Memorandum of Agreement ("MOA") between the District and the
Administrative Employees Association ("AEA").

     It is undisputed that Ms. Gorman has been subject to
several disciplinary actions.  In August of 2006, Ms. Gorman
received two charge letters.  The first alleged that Ms. Gorman
mishandled her supervisor's mail and the second alleged that Ms.
Gorman taped conversations with her boss without her boss'
knowledge.  Ms. Gorman filed a complaint with the Special Master
alleging that the two charge letters were in retaliation for her
earlier request for reclassification of her position.  On March
5, 2007, following an evidentiary hearing, the Special Master
found that Ms. Gorman had not established retaliatory conduct.

     Ms. Gorman received two additional charge letters in
January of 2007.  It was these two letters which became the
subject of the Special Master's March 22, 2007 Order.  The first
of these disciplinary actions relates to allegations that Ms.
Gorman impermissibly altered her time sheets and the second

1 action relates to allegations that Ms. Gorman forged her

2 supervisor's signature.  Ms. Gorman denies the allegations.

3 Meanwhile, Ms. Gorman's employment was terminated effective

4 January 27, 2007.

5      Both of these disciplinary actions are subject to the

6 administrative appeal process contained in the AEA MOA.  See

7 Sacramento Regional Transit District – Personnel Rules and

8 Procedures for Salaried Employees, District's Ex. D.  Neither of

9 these proposed disciplinary actions have been pursued to the

10 final step of the grievance process, although Ms. Gorman is in

11 the process of pursuing these administrative remedies.

12      Ms. Gorman appealed her termination to the Special Master,

13 arguing that her termination was in retaliation for pursuing her

14 rights under the Consent Decree.  In support of her appeal, Ms.

15 Gorman argued that the District terminated her "although the

16 appeals process had not been completed pursuant to its policies

17 and procedures, and provided her with less than a day's notice

18 of her termination meeting" for "pursuing her rights under the

19 Consent Decree."  Compl. of Ann Gorman, District's Ex. E.  She

20 further contended that her termination was done in a manner

21 "that was not in compliance with RT's previous representations

22 that Gorman would be placed on administrative leave until the

23 issues in [the Charge Letter] were resolved." Id.

24      The Special Master held a conference call with counsel for

25 both parties on March 22, 2007.  During that call, counsel for

26 the District requested a hearing on the issue of retaliation.

1   The request was denied.

2        On that same day, the Special Master issued a two page

3   ruling, which provided in full:

        Based on the Special Master's evaluation of the
        evidence presented in support and opposition to the
5       Complaint regarding the termination of Ann Gorman as
        well as information and arguments provided at the
6       conference call of March 22, 2007, the Special Master
        makes the following ruling:

7
        1)   The evidence supports a finding that a prima
8       facie  case of retaliation has been established by Ms.
        Gorman;

9
        2)   The District has provided some evidence that the
10      disciplinary issues were not motivated by a
        retaliatory motive; however because the District did
11      not follow its own appeal policies and gave
        conflicting and confusing information to the Claimant
12      about her status pending resolution of the issue, the
        Special Master finds that an inference of retaliation
13      has been established and that the Districts'
        explanation is pretextual;

14
        3)   The Special Master, therefore, orders that RT
15      shall complete the appeal review procedure set forth
        in its own procedures (RT Complaint Procedures
16      5-5.206) and render a final decision with respect to
        Ms. Gorman's termination based on Charge Letter # 3
17      (dated January 3, 2007).

18      4)   During the completion of RT's appeal review, RT
        is ordered to place Ms. Gorman on paid administrative
19      leave as previously indicated would be done by her
        Supervisor, Ms. Ham (See Memo dated January 5, 2007,
20      sic. January 8, 2007, Exhibit 5 to Complaint).

21      5)   RT is further ordered to advise Ms. Gorman of the
        results of said review and advise Ms. Gorman pursuant
22      to Code of Civil Procedure 1094.6(f) of her right to
        bring a Writ of Mandate pursuant to Code of Civil
23      Procedure 1094.5.

24
    March 22, 2007 Order, District's Ex. A.
25
        It is the March 22, 2007 order that the District appeals.
26

1 In its appeal to this court, the District maintains that
2 subsequent to the Special Master's findings, the appeal process
3 is underway and that in accordance with the Special Master's
4 findings, Ms. Gorman has been placed on administrative leave
5 during the completion of the appeals process.  See Def.'s Appeal
6 at 7.

7     **2.   Analysis**

8     The District argues that the Special Master's ruling is
9 clearly erroneous because the finding of pretext ignores
10 established retaliation law and because it is premature to make
11 a finding of retaliation as Ms. Gorman is still on
12 administrative leave and has not yet been terminated.  For the
13 reasons discussed herein, the Special Master's ruling must be
14 affirmed.

15     The District misconstrues the Special Master's order.  The
16 order is relatively straight forward.  The Special Master
17 concluded that given the proximity between the time that Ms.
18 Gorman sought reclassification and the time that she was
19 terminated, there was evidence which supported a finding of
20 retaliation.  The Special Master also found that the District
21 was not following its own appeal policies and had given
22 conflicting and confusing information to Ms. Gorman about her
23 status pending resolution of her appeal.  For these reasons, the
24 Special Master ordered that the District comply with the appeal
25 review procedure set forth in its own set procedures and that
26 pending the appeal, Ms. Gorman be placed on paid administrative

leave.

Prior to the Special Master's order, the District had in fact terminated Ms. Gorman.  Indeed, it was only after the Special Master's order that the District placed Ms. Gorman on administrative leave.  For this reason, the District's argument that Ms. Gorman's termination has not been finalized is without merit.

Moreover, the Special Master was not making a final determination as to retaliation.  The Special Master simply found that there was evidence which supported a finding of retaliation and accordingly, it was appropriate to place Ms. Gorman on administrative leave.

The District's argument that the Special Master did not sufficiently cite to the record in support of her ruling is also without merit.  The first sentence of the order specifically states that the Special Master based her order on the evidence presented in support of and in opposition to Ms. Gorman's complaint.

Even if the court were to give the District the benefit of the doubt, the District fails to establish how, if at all, the March 22nd Order is clearly erroneous or contrary to law.  For these reasons, the District's appeal must be DENIED.

**III.**

**Conclusion**

1.   Plaintiff's Appeal is DENIED.

2.   Defendant's Appeal is DENIED.

15

1    IT IS SO ORDERED.

2    DATED: May 9, 2007.

3

4                              _____
                               LAWRENCE K. KARLTON
5                              SENIOR JUDGE
                               UNITED STATES DISTRICT COURT
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26